IN THE COURT OF COMMON PLEAS, STARK COUNTY, OHIO

## LOUIS P. GIAVASIS
### STARK COUNTY CLERK OF COURTS

**LAURIE MUEHLHEIM**
              PLAINTIFF,
    VS.
                                CASE NUMBER: **2020CV01398**

**ST JOSEPH CARE CENTER , ET AL**
                                ASSIGNED JUDGE: **FRANK G. FORCHIONE**
              DEFENDANT,

## SUMMONS

October 14, 2020

TO THE FOLLOWING NAMED DEFENDANT:
    ST JOSEPH CARE CENTER
    2308 RENO DRIVE NE
    LOUISVILLE, OH 44641

YOU HAVE BEEN NAMED A DEFENDANT IN A COMPLAINT FILED IN STARK COUNTY COURT OF COMMON PLEAS, STARK COUNTY COURT HOUSE, CANTON, OHIO 44702 BY:
    LAURIE MUEHLHEIM -
    1695 BEAUMONT AVE NW
    MASSILLON, OH 44647                 PLAINTIFF.

A COPY OF THE COMPLAINT IS ATTACHED HERETO. THE NAME AND ADDRESS OF THE PLAINTIFF'S ATTORNEY IS:
    ANDREW PAPPERT
    1621 EUCLID AVE SUITE 300
    CLEVELAND, OH 44115

YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON THE PLAINTIFF'S ATTORNEY, OR UPON THE PLAINTIFF, IF HE HAS NO ATTORNEY OF RECORD, A COPY OF AN ANSWER TO THE COMPLAINT WITHIN TWENTY-EIGHT DAYS AFTER THE SERVICE OF THIS SUMMONS ON YOU, EXCLUSIVE OF THE DAY OF SERVICE. YOUR ANSWER MUST BE FILED WITH THE COURT WITHIN THREE DAYS AFTER THE SERVICE OF A COPY OF THE ANSWER ON THE PLAINTIFF'S ATTORNEY.

IF YOU FAIL TO APPEAR AND DEFEND, JUDGMENT BY DEFAULT WILL BE RENDERED AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

LOUIS P. GIAVASIS
CLERK OF COURTS
STARK COUNTY, OHIO

J. LAWRENTZ, DEPUTY CLERK

**EXHIBIT A**

IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

FILED
OCT 13 2020
LOUIS P. GIAVASIS
STARK COUNTY OHIO
CLERK OF COURTS
2020CV01398

| | |
|---|---|
| LAURIE MUEHLHEIM<br>1695 Beaumont Avenue NW<br>Massillon, Ohio 44647 | CASE NO.<br><br>JUDGE: Forchione |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES AND REINSTATEMENT** |
| ST. JOSEPH CARE CENTER<br>2308 Reno Drive NE<br>Louisville, Ohio 44641 | **JURY DEMAND ENDORSED HEREIN** |
| **Serve also:**<br>SUSAN M. STRUTNER<br>c/o St. Joseph Care Center<br>2308 Reno Drive NE<br>Louisville, Ohio 44641 | |
| And | |
| KARI STOCKER<br>c/o St. Joseph Care Center<br>2308 Reno Drive NE<br>Louisville, Ohio 44641 | |
| Defendants. | |

Plaintiff, Laurie Muehlheim, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Muehlheim is a resident of the city of Massillon, county of Stark, state of Ohio.

2. St. Joseph Care Center ("St. Joseph") is a resident of the state of Ohio.

3. St. Joseph is a corporation for non-profit with its principal place of business located at 2308 Reno Drive NE, Louisville, Ohio.



The Employee's Attorney.™

4. Stocker was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at St. Joseph who acted directly or indirectly in the interest of St. Joseph.

5. Stocker was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

6. All of the material events alleged in this Complaint occurred in Stark County.

7. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1) and (4).

8. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

10. Muehlheim is a former employee of St. Joseph.

11. St. Joseph hired Muehlheim as a Cook in or around August 2009.

12. During her 11 years at St. Joseph, Muehlheim had no legitimate history of meaningful discipline.

13. Muehlheim regularly received positive reviews.

14. Muehlheim received a large pay increase in or around the end of 2019.

15. In or around middle January 2020, Muehlheim became concerned with the state of the kitchen where she worked (hereinafter "Muehlheim's First January 2020 Complaint").

16. Upon information and belief, it was standard procedure that the kitchen be cleaned and sanitized after every service to protect patients at St. Joseph.

17. During Muehlheim's First January 2020 Complaint, Muehlheim observed that the kitchen was not clean.



18. During Muehlheim's First January 2020 Complaint, Muehlheim observed toast left in the toaster overnight.

19. During Muehlheim's First January 2020 Complaint, Muehlheim observed food left on the counter.

20. During Muehlheim's First January 2020 Complaint, Muehlheim observed grease stains in the kitchen, on the floors, and in the dining room.

21. During Muehlheim's First January 2020 Complaint, Muehlheim observed food left in the microwave overnight.

22. During Muehlheim's First January 2020 Complaint, Muehlheim feared for the safety of the residents.

23. During Muehlheim's First January 2020 Complaint, Muehlheim informed Stocker of the state of the kitchen.

24. During Muehlheim's First January 2020 Complaint, Stocker did nothing in response to Muehlheim's complaint.

25. Upon information and belief, St. Joseph had a duty to conduct an investigation into Muehlheim's First January 2020 Complaint.

26. St. Joseph failed to investigate Muehlheim's First January 2020 Complaint.

27. In or around late January 2020, Muehlheim complained to Stocker about the state of the kitchen again (hereinafter "Muehlheim's Second January 2020 Complaint").

28. During Muehlheim's Second January 2020 Complaint, Muehlheim pointed out the disarray in the kitchen to Stocker.

29. During Muehlheim's Second January 2020 Complaint, Stocker did nothing in response to Muehlheim's report.



30. Upon information and belief, St. Joseph had a duty to conduct an investigation into Muehlheim's Second January 2020 Complaint.

31. St. Joseph failed to investigate Muehlheim's Second January 2020 Complaint.

32. After Muehlheim's Second January 2020 Complaint, Stocker made it clear she was not going to address Muehlheim's complaints.

33. In or around the beginning of February 2020, Muehlheim flagged down an administrator named Susan Strutner (hereinafter "Early February 2020 Administrator Complaint")

34. Strutner was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at St. Joseph who acted directly or indirectly in the interest of St. Joseph.

35. During the Early February 2020 Administrator Complaint, Muehlheim described the subpar conditions of the kitchen.

36. During the Early February 2020 Administrator Complaint, Muehlheim suggested that they set up a time where Muehlheim could show Strutner the state of the kitchen.

37. During the Early February 2020 Administrator Complaint, Strutner decided to examine the kitchen "right now."

38. During the Early February 2020 Administrator Complaint, the condition of the kitchen shocked Strutner.

39. During the Early February 2020 Administrator Complaint, Strutner stated that the state of the kitchen was unacceptable.

40. During the Early February 2020 Administrator Complaint, Stocker and Gina Bell aggressively approached Muehlheim approximately 20 minutes after Strutner left the kitchen.

41. Bell was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at St. Joseph who acted directly or indirectly in the interest of St. Joseph.



42. During the Early February 2020 Administrator Complaint, Bell and Stocker scolded Muehlheim for complaining to Strutner.
43. During the Early February 2020 Administrator Complaint, Bell and Stocker told Muehlheim not to bring complaints to administrators.
44. Upon information and belief, St. Joseph had a duty to conduct an investigation into the Early February 2020 Administrator Complaint.
45. St. Joseph failed to investigate the Early February 2020 Administrator Complaint.
46. Instead of taking corrective action by fixing the subpar standards in the kitchen, Stocker reprimanded Muehlheim for complaining.
47. In or around February 6, 2020, Muehlheim began documenting the subpar conditions in the kitchen (hereinafter "February Human Resources Complaint").
48. During the February Human Resources Complaint, Muehlheim took notes about the subpar conditions of the kitchen.
49. During the February Human Resources Complaint, Muehlheim took photos of the subpar conditions of the kitchen.
50. During the February Human Resources Complaint, Muehlheim spoke to Michelle Last Name Unknown.
51. Michelle LNU was at all times hereinafter mentioned, an individual who worked in Human Resources at St. Joseph.
52. During the February Human Resources Complaint, Muehlheim described the subpar conditions of the kitchen to Michelle LNU.
53. During the February Human Resources Complaint, Michelle LNU instructed Muehlheim to continue documenting the subpar conditions of the kitchen.



54. During the February Human Resources Complaint, Muehlheim continued documenting the conditions of the kitchen for approximately two weeks.

55. During the February Human Resources Complaint, Michelle LNU left St. Joseph.

56. Muehlheim was left with the documentation of the subpar conditions of the kitchen and no individual in Human Resources to hand them over to.

57. Upon information and belief, St. Joseph had a duty to conduct an investigation into the February Human resources Complaint.

58. St. Joseph failed to investigate the February Human Resources Complaint.

59. Muehlheim waited to find out who took over Michelle LNU's position in Human Resources.

60. Muehlheim frequently asked to be directed to the acting Human Resources representative.

61. An aid to Muehlheim's supervisors Bell and Stocker told her to report to the payroll department instead.

62. The Payroll department did not conduct investigations into complaints.

63. Bell and Stocker attempted to suppress Muehlheim's complaints.

64. On or about April 23, 2020, Muehlheim informed her supervisor that she was potentially exposed to COVID-19 through her daughter-in-law who had been exposed through work (hereinafter "COVID-19 Incident").

65. During the COVID-19 Incident, a nurse at St. Joseph told Muehlheim that since she wasn't running a fever, she could continue working.

66. During the COVID-19 Incident, Muehlheim continued working at 5 A.M.

67. During the COVID-19 Incident, at approximately 10 A.M., Stocker instructed Muehlheim to immediately grab her belongings and leave work.

68. During the COVID-19 Incident, Stocker instructed Muehlheim to self-isolate for 14 days.



69. Muehlheim complied with the self-isolation request from St. Joseph.
70. On or about April 27, 2020, Muehlheim became ill with a fever and other symptoms of COVID-19 (hereinafter "COVID-19 Testing Incident").
71. During the COVID-19 Testing Incident, on April 27, 2020, Muehlheim's phone stopped working.
72. Because her phone was not working, Muehlheim could not receive or make calls.
73. During the COVID-19 Testing Incident, on or about April 28, 2020, Muehlheim received a message from St. Joseph stating that she was to return to work.
74. During the COVID-19 Testing Incident, on or about April 29, 2020, Muehlheim called Stocker to inform her of the situation regarding her illness.
75. During the COVID-19 Testing Incident, Muehlheim informed Stocker that she would not return to work for the rest of the week.
76. Muehlheim prepared meals for elderly individuals and assisted elderly individuals in the patient facility as part of her job duties.
77. Preparing meals for elderly individuals and assisting elderly individuals in the patient facility while potentially infected with COVID-19 would put the elderly individuals at a substantial health risk.
78. During the COVID-19 testing Incident, Muehlheim went to a doctor to get tested for COVID-19.
79. During the COVID-19 Testing Incident, Muehlheim informed Stocker that she was awaiting test results.
80. During the COVID-19 Testing Incident, Muehlheim relayed her doctor's recommendation to Stocker that she not return to work until they received her COVID-19 test results.

The Employee's Attorney.™ 

81. During the COVID-19 Testing Incident, on May 1, 2020, Muehlheim's doctor faxed a doctor's note to St. Joseph advising them of Muehlheim's inability to return to work until her medical results returned between May 1, 2020 and May 15, 2020.

82. During the COVID-19 Testing Incident, on May 4, 2020, Muehlheim's test results returned negative.

83. During the COVID-19 Testing Incident, Muehlheim's doctor provided an additional notice stating that Muehlheim could not work until May 8, 2020.

84. May 8, 2020 was scheduled to be a follow up appointment with Muehlheim to ensure that her symptoms cleared up and her health did not decline.

85. On or about May 7, 2020, Kari Stocker sent Muehlheim a termination notice.

86. On or about May 7, 2020, St. Joseph terminated Muehlheim's employment.

87. Muelheim's termination notice was dated for May 4, 2020.

88. May 4, 2020 is the same day Muehlheim provided her doctor's notice that she could not return to work until May 8, 2020.

89. According to St. Joseph, they terminated Muehlheim because of her attendance issues.

90. Prior to Muehlheim's termination, Muehlheim worked at St. Joseph for 11 years with minimal attendance write-ups.

91. The only attendance items in Muehlheim's employment history with St. Joseph is due to her potential exposure to COVID-19.

92. St. Joseph's assertion of attendance issues has no basis in fact.

93. St. Joseph's assertion of attendance issues did not actually motivate St. Joseph's decision to terminate Muehlheim.

94. St. Joseph's assertion of attendance was insufficient to motivate the termination of Muehlheim.

95. St. Joseph's assertion of attendance was pretext to terminate Muehlheim.

96. St. Joseph did not terminate similarly situated employees who did not make protected complaints.

97. St. Joseph terminated Muehlheim for complaining about the unsafe working conditions of the kitchen.

98. St. Joseph is a qualified employer under the FMLA.

99. As of January 2020, Muehlheim worked at St. Joseph for at least 12 months.

100. As of January 2020, Muehlheim worked at least 1,250 hours in the previous 12 month period.

101. As such, Muehlheim qualified to take protected FMLA leave.

102. St. Joseph had a duty to advise Muehlheim of her right to take FMLA leave.

103. St. Joseph failed to advise Muehlheim of her right to take FMLA leave.

104. By failing to advise Muehlheim of her right to take FMLA leave, St. Joseph interfered with Muehlheim's right to take FMLA leave.

105. St. Joseph is a qualified employer under the FFCRA.

106. St. Joseph had a duty to advise Muehlheim of her right to take paid leave under the FFCRA.

107. St. Joseph failed to advise Muehlheim of her right to take paid leave under the FFCRA.

108. By failing to advise Muehlheim of her right to take paid leave under the FFCRA, St. Joseph interfered with Muehlheim's right to take paid leave under the FFCRA.

## COUNT I: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

109. Muehlheim restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



The Employee's Attorney.™

110. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

111. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

112. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

113. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

114. Defendants' termination of Muehlheim jeopardizes these public policies.

115. Defendants' termination of Muehlheim was motivated by conduct related to these public policies.

116. Defendants had no overriding business justification for terminating Muehlheim.

117. As a direct and proximate result of Defendants' conduct, Muehlheim has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

The Employee's Attorney.™



## COUNT II: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.

118. Huehlheim restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

119. On or about January 2020, Muehlheim reported to Kari Stocker that the kitchen was not cleaned to the required health standards.

120. On or about February 2020, Muehlheim reported to Susan Strutner that the kitchen was not cleaned to the required health standards.

121. Muehlheim reasonably believed that the kitchen conditions threatened the public's health or safety.

122. Muehlheim verbally complained to Defendants regarding this conduct.

123. Muehlheim gave Defendants an opportunity to cure the reported misconduct.

124. Defendants retaliated against Muehlheim by terminating her employment based on her complaints regarding this conduct.

125. Defendants' termination of Muehlheim was in violation of R.C. § 4113.52.

126. As a direct and proximate result of Defendants' conduct, Muehlheim suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

127. Muehlheim restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

128. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

129. St. Joseph is a covered employer under the FMLA.



130. During her employment, Muehlheim qualified for FMLA leave.

131. Defendants failed to properly advise Muehlheim of her rights under the FMLA.

132. Defendants unlawfully interfered with Muehlheim's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

133. As a direct and proximate result of Defendants' conduct, Muehlheim is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT IV: UNLAWFUL INTERFERENCE WITH THE FFCRA

134. Muehlheim restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

135. Pursuant to the Families First Coronavirus Response Act's amendment of 29 U.S.C. 2601 *et seq* in the Emergency Paid Sick Leave Act (H.R. 6201 § 5102): "An employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because:

   a. The employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19;

   b. The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

   c. The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

   d. The employee is caring for an individual who is subject to an order as described in subparagraph (1) or has been advised as described in paragraph (2);



The Employee's Attorney.™

    e. The employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions; or

    f. The employee is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor."

136. St. Joseph is a covered employer under the Families First Coronavirus Response Act.

137. Muehlheim had been advised by a health care provider to self-quarantine due to concerns related to COVID-19.

138. Muehlheim experienced COVID-19 symptoms and sought medical diagnosis.

139. As such, Muehlheim qualified for paid leave up to but not exceeding two weeks.

140. Defendants became aware that Muehlheim's doctor advised her to self-quarantine related to COVID-19.

141. St. Joseph became aware that Muehlheim experienced COVID-19 symptoms.

142. Defendants became aware that Muehlheim sought a medical diagnosis.

143. Defendants failed to properly advise Muehlheim of her right to take paid medical leave.

144. Defendants unlawfully interfered with Muehlheim's exercise of her rights under the FFCRA.

145. As a direct and proximate result of Defendants' conduct, Muehlheim is entitled to all damages provided for in 29 U.S.C. § 216 and 217.

## DEMAND FOR RELIEF

WHEREFORE, Muehlheim demands from Defendants the following:



The Employee's Attorney.™

(a) Issue an order requiring St. Joseph to restore Muehlheim to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Muehlheim for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Muehlheim claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Andrew Pappert, Esq. (0093964)
The Spitz Law Firm LLC
25200 Chagrin Blvd Ste .200
Beachwood, OH 441122
Telephone: (216) 291-4744
Fax:        (216) 291-5744
Email: drew.pappert@spitzlawfirm.com

*Attorneys For Plaintiff*



The Employee's Attorney.™

## JURY DEMAND

Plaintiff Laurie Muehlheim demands a trial by jury by the maximum number of jurors permitted.

                                                                            Andrew Pappert Esq. (0093964)



Date Produced: 10/19/2020

STARK COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 9489 0090 0027 6160 3739 43. Our records indicate that this item was delivered on 10/17/2020 at 12:44 p.m. in LOUISVILLE, OH 44641. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:    0364063 338613292020CV01398000



UNITED STATES
POSTAL SERVICE™

Date Produced: 10/19/2020

STARK COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 9489 0090 0027 6160 3739 36. Our records indicate that this item was delivered on 10/17/2020 at 12:44 p.m. in LOUISVILLE, OH 44641. The scanned image of the recipient information is provided below.

Signature of Recipient :

[handwritten signature]

Address of Recipient :

[handwritten address]

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:       0364063 338613292020CV01398001



Date Produced: 10/19/2020

STARK COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 9489 0090 0027 6160 3739 29. Our records indicate that this item was delivered on 10/17/2020 at 12:44 p.m. in LOUISVILLE, OH 44641. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:    0364063 338613292020CV01398002